# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### WESTERN DIVISION

ROSHAWN J. WALKER                                                    PLAINTIFF

v.                              No. 4:13CV00541-JM-JJV

CAROLYN W. COLVIN, Acting Commissioner,
Social Security Administration                                      DEFENDANT

## Instructions for Recommended Disposition

The following recommended disposition was prepared for U.S. District Judge James

Moody Jr.  A party to this dispute may object to this recommendation in writing.  An

objection must be specific and state the factual and/or legal basis for the objection.  An

objection to a factual finding must identify the finding and the evidence supporting the

objection.  Objections must be filed with the Clerk of the Court no later than 14 days from

the date of this recommendation.[1]  The objecting party must serve the opposing party with

a copy of an objection.  Failing to object within 14 days waives the right to appeal questions

of fact.[2]  If no objections are filed, Judge Moody may adopt the recommended disposition

without independently reviewing the record evidence.  An objecting party who seeks to

submit new, different, or additional evidence, or to obtain a hearing for that purpose, must

address the following matters as part of written objections: (1) why the record before the

---

[1] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2] *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections waives
right to de novo review and to appeal magistrate judge's findings of fact).

magistrate judge was inadequate, (2) why the evidence was not presented to the magistrate judge, and (3) details and/or copies of any testimony and/or documents to be proffered at a hearing.  Based on this submission, Judge Moody will determine the need for a hearing.

## Recommended Disposition

Roshawn J. Walker seeks judicial review of the denial of her application for disability insurance benefits and supplemental security income.[3]  Walker's last full-time job was in 2008, working on an assembly line at a Tyson's plant.[4]  At that time, Walker lived in Veterans Administration (VA) housing and received treatment for cocaine addiction.

After working for Tyson for three months, Walker was laid off in September 2008.[5] She aggressively sought other employment,[6] but maintains she has been disabled since January 1, 2007.  Walker's last application was denied on October 15, 2007,[7] so her earliest eligibility date is October 16, 2007.[8]  Walker bases disability on knee problems, depression,

---

[3]SSA record at pp. 151 & 155.

[4]*Id*. at pp. 172, 187, 211 & 709.

[5]*Id*. at pp. 257, 706-07, 709 & 730.

[6]*Id*. at p. 518 (she said she will take any type of employment until the VA gives her a job); p. 527 (she's applied for work at Food Giant, Cisco, Goodwill, Staffmart, and Manpower); p. 618 (two job interviews scheduled next week); p. 621 (working on applying for jobs) & p. 1651 (she applied for a job with Pride Industries).

[7]*Id*. at p. 182.

[8]*Hulsey v. Astrue*, 622 F.3d 917, 924 (8th Cir. 2010) ("The law-of-the-case doctrine generally prevents relitigation of an issue previously resolved, and requires courts to

2

and post traumatic stress disorder (PTSD).[9]

**The Commissioner's decision**.    After considering the application, the Administrative Law Judge (ALJ) determined Walker has severe impairments — degenerative joint disease in both knees, depressive disorder, and PTSD[10] — but she can do some sedentary work.[11]  Because a vocational expert identified available work for a person with Walker's limitations,[12] the ALJ denied the application.[13]

After the Appeals Council denied a request for review,[14] the ALJ's decision became a final decision for judicial review.[15]  Walker filed this case to challenge the decision.[16]  In reviewing the decision, the Court must determine whether substantial evidence supports

_____

adhere to decisions rendered in earlier proceedings. This doctrine applies to administrative agencies on remand.").

[9]SSA record at p. 186.

[10]*Id*. at p. 16.

[11]*Id*. at p. 19.

[12]*Id*. at pp. 69-70.

[13]Id. at p. 25.

[14]*Id*. at p. 1.

[15]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating, "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[16]Docket entry # 1.

the decision and whether the ALJ made a legal error.[17] This recommendation explains why

substantial evidence supports the decision and why the ALJ made no legal error.

**Walker's allegations**.  Walker contends the ALJ did not consider the combination

of her impairments.  She challenges the ALJ's evaluation of her credibility.  She maintains

the ALJ failed to properly consider her VA disability award.  She characterizes the

unfavorable decision as "bootstrap justice," because she claims the ALJ only considered

evidence supporting the unfavorable decision.  She says the ALJ's hypothetical question

omitted some of her limitations.  For these reasons, she argues that substantial evidence

does not support the ALJ's decision.[18]

**Applicable legal principles**.  For substantial evidence to support the decision, a

reasonable mind must accept the evidence as adequate to show Walker can do some

sedentary work.[19]  Sedentary work "involves lifting no more than 10 pounds at a time and

---

[17]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

[18]Docket entry # 13.

[19]*Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate to support the decision); *Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990) ("Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a

occasionally lifting or carrying articles like docket files, ledgers, and small tools."[20] Sedentary work "represents a significantly restricted range of work. Individuals who are limited to no more than sedentary work by their medical impairments have very serious functional limitations."[21]

In this case, the ALJ reduced sedentary work by the following limitations: (1) no more than two hours of standing or walking; (2) occasional stair climbing, stooping, or crouching; (3) no walking on uneven surfaces or difficult terrain; (4) temperature controlled environments; (5) work involving simple instructions and simple work-related decisions; and (6) work involving interpersonal contact that is incidental to work performed, complexity or tasks is learned and performed by rote, with few variables, little judgment, and simple, direct, and concrete supervision.[22]   A reasonable mind would accept the following evidence as adequate to show Walker can work within these parameters.

**Evidence of physical impairment**.  Walker contends the ALJ failed to consider all of her impairments, but she has only one significant physical impairment — she has bad knees.  Walker complained about knee pain for years.  According to Walker, her knees

conclusion.'").

[20]20 C.F.R. §§ 404.1567(a) & 416.967(a).

[21]SSR 96-9p, *Pol'y Interpretation Ruling Titles II & XVI: Determining Capability to Do Other Work--Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work.*

[22]SSA record at p. 19.

began to hurt in 1982 during Army basic training.[23]  That claim forms the basis of a VA

disability compensation award.

Walker maintains the ALJ should have given the VA award "great weight."  This

argument flows from a letter stating that the VA increased Walker's 30% disability award

to 70%, based on the degenerative changes in her knees.[24]  The letter is not properly before

the Court because it is not part of the agency record.  Walker sought to supplement the

agency record by filing the letter with this Court,[25] but this Court must review the record

before the agency.[26]

The record before the agency reflects a 20% disability rating for knee pain, later

increased to 30%.  Even if the letter was part of the record, it does not advance Walker's

claim, because the ALJ thoroughly considered the basis of the VA award — the

degenerative changes in Walker's knees.[27]  Those changes do not prevent sedentary work.

---

[23]*Id.* at p. 432.

[24]Docket entry # 12, ex. A.

[25]Docket entry # 12.

[26]*See* 42 U.S.C. § 405(g) (court "may…order additional evidence to be taken before
the Commissioner…, but only upon a showing that there is new evidence which is material
and that there is good cause for the failure to incorporate such evidence into the record in
a prior proceeding); *Ellis v. Bowen*, 820 F.2d 682 (5th Cir. Tex. 1987) (explaining that the
court reviews the record before the ALJ; the court may not receive new evidence, although
the court may remand a case for new evidence).

[27]Docket entry # 12, ex. A (award based on degenerative joint disease of the knees).

Moreover, the letter has limited probative value because the VA uses different rules and standards than the Commissioner.  The VA rules resolve doubts about disability in favor of the veteran.[28]  In contrast, an ALJ must evaluate the claimant's credibility before determining her ability to work and rely on competent medical evidence.[29]  Here, the ALJ evaluated Walker's credibility using the required two-step process and the required factors,[30] and determined that Walker over-stated her pain and limitation.  The medical evidence and Walker's inconsistent statements[31] support the ALJ's credibility evaluation.

Instead of focusing on the VA's determinations, the ALJ properly focused on the medical evidence, because the ALJ must "establish, by *competent medical evidence*, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments."[32]  The Commissioner's decision must be supported by medical evidence of the claimant's ability to work, notwithstanding a VA

---

[28]38 C.F.R. §§ 3.102, 4.2, 4.3.

[29]*Ellis v. Barnhart*, 392 F.3d 988, 995-96 (8th Cir. 2005); *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996); *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992).

[30]*See* SSR 96-7p, *Policy Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*.

[31]*Compare* SSA record at p. 186 (stopped working because of my medical conditions) & p. 693 (reporting that she returned to Tyson, but is now on medical leave due to her knee), *with*, *id*. at p. 707 (reporting that Tyson laid her off) & p. 709 (laid off from Tyson).

[32]*Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996) (emphasis added).

7

determination.[33]

The competent medical evidence reflects complaints of knee pain beginning in 2006.[34]  In 2008, diagnostic imaging showed degenerative changes in both knee caps.[35] Degenerative changes in the knee cap can cause pain in the front of the knee and make it difficult to kneel or climb stairs.[36]  Walker complained about this type of pain.[37]

Walker's doctor explained that "physical therapy is…the mainstay of treatment in this condition."  Although her doctor recommended physical therapy, Walker started working full-time for Tyson; her job required prolonged standing.  Ultimately, her doctor agreed to perform arthroscopic surgery to explore abnormalities shown on the diagnostic imaging, but warned that surgery would not eliminate all her pain.[38]

───────────────

[33]*Flynn v. Astrue*, 513 F.3d 788, 792 (8th. Cir. 2008); *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003).

[34]SSA record at p. 281 (complaining about knee pain in Jan. 2006).

[35]*Id*. at p. 333 (mild arthritic changes in the knees, more so on the right) & p. 327 (damaged cartilage under left kneecap).

[36]Barbara J. Mitchell, 2 The Gale Encyclopedia of Med. 1011 (4th ed.) (discussing how degenerative changes in the knee cap can cause pain when "squatting, kneeling, going up or down stairs, especially down, or by repeated bending of the joint").

[37]SSA record at p. 419 (she complained about pain when walking, but mostly going up stairs; she also has pain when squatting down).

[38]*Id*. at p. 409 ("Seeing that she is markedly symptomatic, we will plan on arthroscoping her left knee"); p. 420 (an arthroscopy is not a surefire way to eliminate all of her pain) & p. 1496 (most likely she will need some sort of resurfacing procedure in the future to get rid of her pain).

The surgery was done after Walker was laid off from Tyson.  As predicted, knee surgery did not eliminate her pain.[39]  Walker insisted on a knee replacement, but she was too young for a knee replacement.[40]  Her doctors prescribed physical therapy and specialized pain management, but she did not comply with treatment recommendations.[41] She demanded narcotic pain medication, but her doctors refused to give her narcotic pain medication due to a history of cocaine addiction.[42]

A reasonable mind would accept the evidence as adequate to support the reduction to sedentary work, because degenerative changes in the knees cause pain and make it

---

[39]*Id*. at p. 672 (she complains about severe pain; "intraoperative findings were such that little could be done").

[40]*Id*. at p. 672 (on Oct. 27, 2008, she wants knee replacement, but she is only 44 and too young for knee replacement; she adamantly states that this should be her decision, not the doctor's decision) & p. 1639 (on Jan. 6, 2011, there is no surgery to completely relieve her pain; knee replacement fails for this type of pain; she is too young for any type of resurfacing procedure; she needs physical therapy).

[41]*See, e.g., id*. at p. 609 (pain specialist plans to discharge her because she is positive for cocaine in violation of pain contract); p. 876 (noncompliant with knee braces; using a cane); p. 1030 (not wearing her knee braces because she says they are too much trouble to put on/off); p. 1629 (very reluctant to do physical therapy for her knees) & p. 1881 (noncompliant with clinic visits and second opinions from Houston VA orthopedists).

[42]*Id*. at p. 608 (she may not have narcotic pain medication because she is positive for cocaine); p. 658 (she became very loud in the doctor's office and used inappropriate language; she will get no pain medication today; she must wait until her pain management appointment); p. 1886 (she wants Hydrocodone; she says she will buy it off the street if not prescribed; doctor will instruct the emergency room not to give her narcotics) & p. 1881 (she just wants to take Hydrocodone, but she doesn't need it because she doesn't have that much pain).

difficult to walk or stand for prolonged periods of time. The diagnostic imaging remained fairly consistent throughout the agency proceeding, showing relatively stable degenerative changes in both knees.[43] The degenerative changes do not preclude sedentary work because sedentary work involves mostly sitting; it does not involve the type of movement that would cause or aggravate knee pain. According to Walker's doctor, her work should not require prolonged standing or stair-climbing.[44] The ALJ's limitations on standing/walking, stair-climbing, stooping, crouching, uneven surfaces, and difficult terrain accommodate Walker's knee pain.

Although Walker complains about the combination of her impairments, the evidence reflects no other significant physical impairment. She complained about other things during the pendency of her application, but her issues were resolved with treatment.[45] She

---

[43]*Id*. at p. 1615 (MRI of right knee showing degenerative changes involving the medial and lateral meniscus with no evidence of meniscus tear, and increased signal changes suggesting tendinitis); p. 1617 (post-arthrogram MRI of left knee showing no evidence of meniscus tear and increased signal changes suggesting tendinitis); pp. 1637-38 (MRIs showed no soft tissue pathology other than patellar tendinitis) & p. 1862 (radiology shows showing minimal degenerative changes of the tibiofemoral joint and the femoral patella joint).

[44]*Id*. at p. 1647.

[45]*See, e.g., id*. at p. 595 (ER visit for chest pain; chest x-ray and cardiac work up negative); p. 629 (dermatology clinic; acne is cleared up); p. 753 (dermatology; her hair products are getting on her face and causing pinpoint comedones); p. 1631 (dermatology for break-outs caused by steroid injection); p. 1634 (podiatry for calluses on her feet; she has flat feet and hammer toes); p. 1722 (ER visit for boils); pp. 1807-09 (ER visit for cough and complaints of knee pain; diagnoses: allergic rhinitis, chronic cough, and chronic knee pain)

has some occasional back pain when her knee pain is exacerbated,[46] but diagnostic imaging shows no reason for disabling pain.[47] Her reliance on numerous visits to the emergency room is misplaced, because those visits suggest efforts to obtain narcotics, rather than the need for emergency treatment.[48]

**Evidence of mental impairment**. Walker experienced depression flowing from her circumstances. She was often homeless, unemployed, paroled, and incarcerated during the pendency of her application.[49] She owes court fines and back child support. She has been treated for PTSD and drug addiction many times, but she discontinued mental health treatment after the VA increased her award.[50]

The agency mental health expert reviewed Walker's extensive mental health records

---

& p. 1933 (ER visit for cough and vaginal infection).

[46]*Id*. at p. 439 (low back pain is mostly axial from limping from a chronically painful knee).

[47]*Id*. at p. 328 (moderate bilateral facet and ligamentous hypertrophy L3/4, L4/5 and L5/S1; no disc bulge, canal or foraminal stenosis).

[48]*See, e.g., id*. at p. 1891 (complaining about knee pain; she just wants pain medication; observed walking normally; patient will receive no further refills of pain medication); p. 1901 (complaining about knee pain and headache, and reporting that she couldn't make it for her scheduled drug screen) & p. 1926 (complaining about vaginal odor and reporting that she lost her pain medication).

[49]*Id*. at pp. 57, 521, 574, 611, 1289, 1296 & 1464.

[50]Walker sought an increase in her VA compensation based on PTSD, but the VA awarded no compensation for PTSD.

and reported that she can do work where interpersonal contact is incidental to work performed; complexity of tasks is learned and performed by rote, few variables, little judgment; and supervision required was simple, direct and concrete.[51] To confirm, the ALJ sent Walker for a mental diagnostic evaluation.[52] By that time, Walker had had no mental health treatment for eighteen months.

Walker explained that she stopped treatment because her doctor made her angry.[53] She described no intrusive thoughts or environmental triggers for past trauma.[54] According to the psychological examiner, Walker can understand, carry out and remember simple instructions, although depression may interfere with decision making and maintaining focus.[55] Irritability and agitation associated with depression might interfere with relationships with coworkers and supervisors.[56] The examiner opined that, if stabilized on medication, Walker's functioning would improve.[57]

––––––––––––––––––––

[51]SSA record at p. 1835.

[52]Id. at p. 72.

[53]Id. at p. 1946. Her doctor's last treatment note indicates she stopped her taking her medication. Her doctor felt her presentation flowed from stopping her medication and that she needed to restart her medication. See id. at p. 1663.

[54]Id. at p. 1948.

[55]Id. at p. 1942.

[56]Id. at p. 1949.

[57]Id. at p. 1943.

A reasonable mind would accept the evidence as adequate to support the defined work parameters, because the evidence indicates Walker's depression prevents her from doing complex work and interferes with her ability to work harmoniously with others. The defined parameters accommodate those limitations by limiting Walker to simple, unskilled work, and requiring incidental contact with co-workers and supervisors.

**Vocational evidence**. The ALJ asked a vocational expert about available work for a person with Walker's impairments.[58]  The vocational expert identified representative sedentary work.[59]  Walker maintains the ALJ's question omitted many of her limitations, but the ALJ's hypothetical question captured the concrete consequences of Walker's bad knees, depression, and PTSD.[60]  The question was proper.

The vocational expert's answer shows work exists that Walker can do, regardless of whether such work exists where she lives, whether a job vacancy exists, or whether she would be hired if she applied for work.[61]  Because such work exists, Walker is not disabled

---

[58]*Id*. at pp. 67-69 (asking about work for person who can lift 10 pounds occasionally, sit 6 hours, walk 2 hours, temperature controlled environment, occasionally climb stairs, stoop, crawl, no walking on uneven surfaces, and simple, routine, repetitive work with occasional contact with others).

[59]*Id*. at pp. 69-70 (identifying food order clerk and scale operator as representative jobs).

[60]*Lacroix v. Barnhart*, 465 F.3d 881, 889-90 (8th Cir. 2006) (explaining that ALJ's hypothetical question must capture concrete consequences of claimant's impairments).

[61]42 U.S.C. § 1382c(a)(3)(B) (defining disability under social security disability law).

under social security disability law.

**Conclusion and recommendation**.  Walker identified her barriers to employment years ago,[62] but those barriers are not reasons for disability benefits under social security disability law.  Substantial evidence supports the ALJ's decision.  The ALJ made no legal error.  For these reasons, the undersigned magistrate judge recommends DENYING Walker's request for relief (docket entry # 2) and AFFIRMING the Commissioner's decision.

It is so ordered this 19th day of May, 2014.

_____

JOE VOLPE
UNITED STATES MAGISTRATE JUDGE

---

[62]SSA record at p. 527 (she feels her chances of obtaining good employment is poor because she has a felony conviction on her record) & p. 627 (she continues to express a desire to work, but refuses to work for less than $11/hour).  Walker's criminal history includes prostitution, carrying a weapon, failing to appear, theft of property, contempt of court, disorderly conduct, obstruction of government operations, possession of instrument/drug paraphernalia, and traffic offenses.